United States Court of Appeals,

Eleventh Circuit.

No. 95-4765.

ISBRANDTSEN MARINE SERVICES, INC., a Connecticut corporation, Plaintiff-Counter-Defendant-Appellee,

Florida Transportation Services, Inc., Intervenor-Plaintiff,

v.

M/V INAGUA TANIA, Her engines, tackle, apparel, freights, etc., in rem, Defendant-Intervenor-Defendant,

Zuki Teria Navigation, Inc., Claimant-Defendant-Counter-Claimant,

Sea Road Shipping, Inc., Defendant,

Crew and Seamen of the M/V Inagua Tania, Movant-Appellant.

Aug. 20, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-6206-CIV-WJZ), William J. Zloch, Judge.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL[*], Senior District Judge:

GOETTEL, Senior District Judge:

The crew of the M/V INAGUA TANIA appeal from a denial of their attempt to intervene in an *in rem* admiralty action in the Southern District of Florida. The M/V INAGUA TANIA is an ocean-going freighter of Honduran registry whose crew was composed of aliens from Central and South America. The vessel was arrested on March 1, 1995, by Isbrandtsen Marine Services, Inc., ("Isbrandtsen") which claimed a lien for necessaries in the amount of $83,657.65. At the time of the arrest the vessel was engaged in the carriage of international trade for hire. It was arrested in Port Everglades

[*]Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

but shortly after the arrest a substitute custodian was placed in charge and the vessel was moved to an offshore anchorage.

The vessel had been on charter and was scheduled to commence a new charter two days after its arrest. On March 2, 1995, the vessel's owner, Zuki Teria Navigation, Inc., filed a claim and an emergency motion for post-arrest hearing to vacate arrest or, alternatively, to set the amount of the release bond and counter security.

On March 14, 1995, Isbrandtsen filed a second amended complaint increasing the maritime lien claimed to $175,958.04 and adding *in personam* claims against the owner of the vessel and the vessel charterer. The shipowner's motion for relief was heard by a Magistrate Judge who set a release bond in the approximate amount of $300,000. The bond was to be for the benefit of Isbrandtsen alone. Isbrandtsen sought an immediate sale of the vessel claiming that it was a wasting asset. (Actually the greatest cause of waste was the substantial cost of the substitute custodian.) The owner opposed this application advising the Court that it was attempting to obtain security in accordance with the Court's order and that it was also attempting to settle the claims of Isbrandtsen. The owner complained about the fact that the vessel had been moved one and a half miles out to sea at an anchorage without specific permission of the Court and noted that it was accruing substantial costs in terms of the crew's salaries and other items.

On March 24, 1995, Florida Transportation Services, Inc., was allowed to intervene to enforce its maritime lien against the vessel. Its lien was substantially greater than that of

Isbrandtsen.  A dispute occurred between the two arresting parties as to sharing the substantial costs of the substitute custodian.  However, the Court then noted that Florida Transportation Services, Inc., had not prepared a supplemental warrant of arrest required by the local rules of the Southern District of Florida.[1]  Consequently, the Court vacated the initial order allowing Florida Transportation Services, Inc., to intervene.

Several other disputes evolved between the owner and Isbrandtsen.  Isbrandtsen valued the vessel at a maximum of $300,000;  the owner claimed the vessel was worth ten times that amount.  Isbrandtsen maintained that the crew had refused to work and that, consequently, it had been forced to retain a substitute crew at its own expense;  the owner denied this and claimed that the crew was aboard and doing such work as could be done considering the situation of the vessel.

The crew members maintain that, while they were aware that the vessel was under arrest, they were continually assured by the Isbrandtsen representatives and the substitute custodian that the matter would be resolved and, thus, they had no fears concerning their own position.

On April 28, 1995 the Court ordered an interlocutory sale.  On May 1, 1995, the District Court directed the interested parties to engage in mediation to see if the dispute could be settled.  This effort was ultimately unsuccessful.

---

[1]The Southern District of Florida rules do require a supplemental warrant of arrest by an intervening party even though the vessel has already been arrested.  The purpose of this rule is not readily apparent.

The vessel's owner continued to oppose the application for the interlocutory sale of the vessel. It argued that it had one million dollars in hull insurance coverage so that the vessel was clearly not to be sold for scrap. The owner also produced an appraisal supporting its claim that the vessel was worth about $3,000,000. It also claimed that it continued to support the crew and to render necessary maintenance on the vessel, at its own expense, in the total amount of $125,000 since the arrest. (It submitted invoices which it claimed to have paid concerning these expenses.) With respect to the crew, the owner claimed that it was working with them concerning the wages owed to them. Certain of the crew members had been paid off and expatriated to their homes. The owner claimed that it had made arrangements with the remaining crew members to pay any outstanding wages.

Florida Transportation Services, Inc., filed a supplemental warrant of arrest claiming a lien in the amount of $473,115.80 and was allowed once again to intervene on May 11, 1995. At that point the Court had already ordered the sale of the vessel. Notice of the sale was published twice in the *Broward Daily Business Review,* on May 9 and May 12, 1995. The date of the sale was set for May 16, 1995. The Notice advised interested parties that the ship was at Sunshine Shipping, Inc., Berth 25, Port Everglades. In fact, the vessel was anchored a couple of miles off shore.

On the date of the sale, an attorney apparently not familiar with admiralty practice or the Local Admiralty and Maritime Rules of the Southern District of Florida filed an intervenors' "Notice of Maritime Liens and Motion to Enforce 46 U.S.C. §§ 971, [sic]

Maritime Lien" with respect to the crew and seamen of the vessel as well as a number of other suppliers of necessaries.[2] With respect to the crew he submitted invoices totalling $158,800 for wages owed to them.

On May 17, 1995, the Court entered an Order, rejecting the applications of all the parties seeking intervention at that time. The Court noted that they had failed to file intervening complaints as required by the local rules,[3] that they were not presently

---

[2]Among the other parties seeking intervention at that time was a travel agency which claimed to have supplied transportation to eight or ten crew members for their return to their homelands. It was alleged that these amounts were supplied prior to the arrest. However, with one or two exceptions, all of the amounts claimed were subsequent to the arrest of the vessel.

[3]Rule E(2)(b) of the Southern District of Florida Admiralty and Maritime Rules governs permissive intervention when the vessel has been scheduled for sale by the Court and provides as follows:

> (b) Permissive Intervention When the Vessel or Property Has Been Scheduled for Sale by the Court. Except as indicated below, and subject to any other rule or order of this Court, *no person shall have an automatic right to intervene in an action where the Court has ordered the sale of the vessel or property, and the date of the sale is set within fifteen (15) days from the date the party moves for permission to intervene* in accordance with this subsection. In such cases, the person seeking permission to intervene must:
>
> > (1) File a motion to intervene and indicate in the caption of the motion a request for an expedited hearing when appropriate.
> >
> > (2) Include a copy of the anticipated intervening complaint as an exhibit to the motion to intervene.
> >
> > (3) Prepare and offer for filing a supplemental warrant of arrest and/or a supplemental process of attachment and garnishment.
> >
> > (4) Serve copies of the motion to intervene, with exhibits and proposed process upon every other

parties to the action and, consequently, the Court found itself without jurisdiction to consider the notices of maritime liens and motions to enforce. Alternatively, the Court held that, if they were properly before the Court, their applications were denied for failure to comply with the local rules. In particular the Court noted that it had ordered the sale of the vessel on April 28, 1995, and that under the local rule no one was allowed automatically to intervene within fifteen days of the date set for sale. [4] Consequently, the Court denied the motion for permissive intervention. The Court also noted that three of the proposed intervenors (not including the travel agency) were claiming a lien by virtue of repairs and supplies provided during a time period that overlapped the arrest of the vessel by a couple of months which was contrary to the order with respect to a substitute custodian.

Following the sale, the ship owner objected to confirmation of the sale and moved to set it aside. It noted that the notice of sale inaccurately stated the location of the vessel and argued that it was insufficient to give reasonable notice to intended purchasers. In fact, at the sale of the vessel, the only bidders

party to the litigation.

> (5) File a certificate of service indicating the date and manner of service.

Thereafter, the Court may permit intervention under such conditions and terms as are equitable to the interests of all parties ... (emphasis added).

[4]We note that this left only a three-day period following the order to sell the vessel, namely, from April 28 to May 1, 1995 in which any party which had not previously done so should seek to intervene. Of these three days, two were weekend days.

present were the two plaintiffs, Isbrandtsen and Florida Transportation Services, Inc., who bought the vessel for the amount of $300,000. The ship owner argued that there were other interested purchasers but that the vessel was in a location where they could not examine it and that prospective purchasers had been refused access to the vessel by Isbrandtsen. (One prospective purchaser did gain access to the vessel albeit with some difficulty). Following its acquisition of the vessel, Isbrandtsen offered the vessel for sale or time charter pursuant to a published notice and set a price of $1,000,000 for the vessel in "as is" condition.

The crew also moved to set aside the sale of the vessel and for emergency interim relief allowing it to file as priority creditors. The crew members maintained that under 46 U.S.C. §§ 971-975 they had a superior claim to those of the original plaintiffs as suppliers of necessaries. They argued that they had not been given proper notice of the intended date of sale and did not learn about it until two days prior to the date of sale. It was at that point that they first retained an attorney who prepared papers the following day which were filed on the day of the sale. In their application the crew members argued that, contrary to the owner's earlier representations, they had not been paid since the date of the vessel's arrest. Moreover, as foreign subjects they did not have the financial means either to get themselves home or to maintain themselves.

The crew's application was denied by the Court on June 2, 1995. The Court noted that the vessel had been sold more than two

weeks earlier and consequently held that the motion for permissive intervention was untimely. However, since the petition sought leave to file priority creditors' claims *nunc pro tunc,* the Court assumed that the petition had been timely filed. Nevertheless, it again relied on the fact that intervention must occur more than fifteen days before the sale of the vessel. Although the Court found that the instant petition fulfilled the procedural requirements of the local rules, the Court held that "intervention at this late date would not be equitable to the interest of all parties." As to the petition to set aside the sale, the Court held that since the seamen were not properly before the Court it would not consider the application.

The motion was renewed by counsel for the seamen on June 15, 1995. It was denied for lack of jurisdiction. On June 21, 1995, the Court granted an order confirming the sale finding that the sale was reasonable under the circumstances and that accessibility to the vessel by potential buyers was not unduly burdensome. The record does not reveal whether the vessel was sold by the plaintiff or chartered, but shortly thereafter it was released from arrest and left the district. The sum paid to the Marshal from the sale, less certain expenses, has been held in the custody of the Court because of appeals filed by the ship owner and other proceedings. The crew members sought to have the release of the sums stayed until their appeal could be heard. That application was initially denied by this Court. However, by order dated March 22, 1996, disbursement of the proceeds of the sale was stayed pending decision of this appeal.

*THE LAW*

Initially the plaintiffs argue that the sale in an *in rem* proceeding clears a vessel of all maritime liens and that the purchaser gained good title against the world. That proposition appears correct. Schoenbaum, *Admiralty and Maritime Law* 514 (2d ed. 1994 & Supp.1995), citing *Tamblyn v. River Bend Marine, Inc.,* 837 F.2d 447 (11th Cir.1988). However, this Court still has jurisdiction in the *in rem* action since the proceeds of the sale remain in the Court's registry in lieu of the *res. Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co.,* 261 F.2d 861, 864 (5th Cir.1958).[5] It is also clear that the interlocutory order denying intervention to the seamen constitutes an appealable order determining the rights and liabilities of the parties as 28 U.S.C. § 1292(a)(3) requires. *Id.* at 863.

The District Court's decisions in this matter were responses to the procedural requirements of the Admiralty and Maritime Local Rules of the Southern District of Florida.[6] The District Court's application of admiralty law and the local rules implementing that law is subject to *de novo* review by this Court. *See Banco de Credito Industrial S.A. v. Tesoreria General,* 990 F.2d 827, 830 (5th Cir.1993)(holding circuit court of appeals reviews district

---

[5]In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[6]Indeed Florida Transport Services, Inc. congratulates itself for having "properly jumped through all the procedural hurdles imposed by the Federal Rules of Civil Procedure, the supplemental rules for certain admiralty and maritime proceedings and the local admiralty rules for the Southern District of Florida." Appellees' Brief pg. 6.

court's denial of crewmen's motion to intervene *de novo* ), *cert. denied,* 510 U.S. 1071, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994).

We start with the well known consideration that "[s]eamen ... are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1160-61 (5th Cir.1985). Since the often cited opinion by Justice Story in *Harden v. Gordon,* 11 F.Cas. 480, 485 (C.C.D.Me.1823) (No. 6047), it has been accepted that

> [e]very Court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel; .... They are emphatically the wards of the admiralty; .... They are considered as placed under the dominion and influence of men, who have naturally acquired a mastery over them; and as they have little of the foresight and caution belonging to persons trained in other pursuits of life, the most rigid scrutiny is instituted in the terms of every contract, in which they engage.

*Harden* was cited approvingly by this Circuit in *Flores v. Carnival Cruise Lines,* 47 F.3d 1120, 1123 (11th Cir.1995).

As the Supreme Court has held, a seaman is "often ignorant and helpless, and so in need of protection against himself as well as others.... Discrimination may thus be rational in respect of remedies for wages." *Warner v. Goltra,* 293 U.S. 155, 162, 55 S.Ct. 46, 49, 79 L.Ed. 254 (1934). A super priority is afforded seamen's liens for wages under 46 U.S.C. § 10313, since such liens are " "sacred and indelible,' *Sheppard v. Taylor,* 30 U.S. (5 Pet.) 675, 710, 8 L.Ed. 269 (1831), and are entitled to be paid "as long as a plank of the ship remains.' *The John G. Stevens,* 170 U.S. 113, 119, 18 S.Ct. 544, 547, 42 L.Ed. 969 (1898)." *Key Bank of Puget Sound v. Alaskan Harvester,* 738 F.Supp. 398, 405 (W.D.Wash.1989).

Because the crew's initial Notice of Maritime Lien and Motion

to Enforce was filed on the day the vessel was to be sold, under Local Rule E(2)(b), their notice was untimely and they had no automatic right to intervene. *See* S.D.Fla.Adm. & Mar.R. E(2)(b). The District Court, however, could have permitted intervention "under such conditions and terms as are equitable...." *Id.*

The Court abused its discretion by failing to aid the crew, "wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Noble Drilling, Inc. v. Davis,* 64 F.3d 191, 195 (5th Cir.1995) (citation omitted); *see also Abogado v. International Marine Carriers,* 890 F.Supp. 626, 634 (S.D.Tex.1995) ("As the Supreme Court has long made clear, courts are to avoid the application of rules and interpretations "which would affect ... [seamen] harshly because of the special circumstances attending their calling.' ")(citing *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 266-67, 83 L.Ed. 265 (1939)).

The document filed by the crew can fairly be construed as a motion to intervene and a complaint. It contains sufficient information to constitute a complaint if set forth in the proper procedural form. In order to protect the crew's claims, the Court should have allowed the crew members to correct any deficiencies under the Court's local rules. Undoubtedly the Court was influenced by the fact that the same attorney had filed a handful of other claims for sophisticated businessmen pursuing non-priority liens. However, there is a rather substantial distinction between businessmen accustomed to conducting commerce with sea-going vessels and the foreign crew of a vessel anchored offshore during a period of arrest. Although it appears that certain of the seamen

were given the option of being paid off and repatriated, we do not know, and the record on appeal does not reveal, whether the same option was even available to the remaining twelve crew members who sought to intervene. If that option was not available to them, they clearly lacked the resources to sustain themselves or obtain their return to their homeland. They also probably lacked the funds with which to obtain an attorney.

Denial of a motion to intervene due to procedural deficiencies would not normally constitute an abuse of discretion. But, here, the District Court ordered an interlocutory sale of the vessel—often the only asset against which seamen can proceed to enforce their claims—and, here, the crew attempted to intervene to enforce a maritime lien for wages owed to them against that vessel. The District Court dismissed the crew's notice "for lack of jurisdiction," rather than affording the crew an opportunity to amend. "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). Thus, the crew members should have been given at least one chance to amend to properly request leave to intervene to assert their claims.

Furthermore, we do not view this case as moot. The vessel was sold at an interlocutory sale and the final rights of the original plaintiffs and the owner to proceeds have not yet been decided. The proceeds of the sale are in the registry of the Court as a substitute for the *res* of the vessel. *Crabtree v. The SS*

*Julia,* 290 F.2d 478, 481 (5th Cir.1961). In support of their claim of mootness, the plaintiffs rely on *American Bank of Wage Claims v. Registry of the District Court of Guam,* 431 F.2d 1215 (9th Cir.1970). However, in that case the appeal was dismissed because not only had the vessel been sold but the proceeds had been disbursed divesting the Court of its *in rem* jurisdiction and there was no bond or stay of execution. The Court, however, noted that "[t]hus, where a vessel is the target of an *in rem* action in admiralty, it must both be within the territorial jurisdiction of [the] court hearing the cause and subject to the order of the court through [the] process of arrest. *The proceeds from the judicial sale of a vessel, or security furnished in lieu thereof, are deemed a jurisdictional substitute for the vessel itself."* *Id.* at 1218 (emphasis added).

The District Court held that it would be inequitable to allow the late claims of the crew members. That is possibly so. The claims of the original plaintiffs and the substitute custodian amount to approximately twice the amount at which the vessel was bid in. However, we do not know what became of the vessel thereafter. Nor, for that matter, do we know the validity of the claims of the crew members that they forwent making an earlier claim for their wages because of the obstruction of Isbrandtsen and the substitute custodian and the owner's representations that a bond would be filed and the vessel released. Finally, we do not have any information as to when the crew first learned of the prospective sale of the vessel.

The simple fact that the crew's attempts to intervene were

untimely under the rules should not be entirely dispositive. Considering the obligations of the Court to seamen, particularly foreign seamen with no adequate representation in Court, we find that the District Court's Order of May 17, 1995, dismissing the Notice filed by the crew "for lack of jurisdiction to consider the same," constituted an abuse of discretion. That Order is vacated and this matter is remanded to the District Court with instructions that the crew be permitted to amend their complaint and motion to intervene.

VACATED and REMANDED.