GULF TOWING CO., INC., etc., et al., Plaintiffs,

Gulf Towing Co., Inc., a Florida Corp., Plaintiff-Appellee,

v.

The STEAM TANKER, AMOCO NEW YORK, etc., et al., Defendants,

Fred F. Enno, Jr., Defendant-Appellant.

No. 80–5643
Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit B

June 15, 1981.

243

Holland & Knight, Julian Clarkson, C. Steven Yerrid, Tampa, Fla., for defendant-appellant.

Kenneth G. Hawkes, Tampa, Fla., for Amoco Shipping Co. & the S/T Amoco New York.

MacFarlane, Ferguson, Allison & Kelly, David F. Pope, David G. Hanlon, Tampa, Fla., for Gulf Towing Co., Inc.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

PER CURIAM:

This admiralty action concerns the sinking of the harbor tug TAMPA in Tampa Bay on November 11, 1975, as the TAMPA was assisting the S/T AMOCO NEW YORK. Gulf Towing Company, the charterer of the TAMPA, and Marine Tugs, Inc., the owner, brought their claims individually and for the use and benefits of their insurers to recover damages resulting from the sinking of the TAMPA. The defendants are the S/T AMOCO NEW YORK and its owner, Amoco Shipping Company, and Fred Enno, Jr., who was piloting the AMOCO NEW YORK when the TAMPA sank.

After trial the district court concluded that the damage to the TAMPA was caused by Enno's negligence which in turn was imputed to the AMOCO NEW YORK *in rem.* The court further concluded that no fault or negligence of the TAMPA proximately caused or contributed to its sinking and that Amoco Shipping and the crew of the AMOCO NEW YORK were not negligent and did not cause or contribute to the sinking of the TAMPA. The court entered judgment against both Enno and the AMOCO NEW YORK *in rem.*

Amoco Shipping asserted a cross-claim against Enno for indemnity, contending that he was a compulsory pilot for whose negligence Amoco Shipping was not liable. Enno answered Amoco's claim contending that his pilotage agreement with Amoco exculpated him from any liability resulting from his own negligence. Amoco urged in reply that the exculpatory language of the pilotage agreement was without consideration and alternatively that the exculpatory clause should not be enforced on public policy grounds. The district court held that the provisions of the pilotage agreement did not constitute a contract because of a lack of consideration and alternatively because void as against public policy.

■ Appellees Gulf Towing and the AMOCO NEW YORK contend that the district court's final judgment in favor of Gulf Towing against Enno and the AMOCO NEW YORK is not appealable because cross-claims between Enno and Amoco Shipping are pending. Appellees rely on Fed.R.Civ.P. 54(b),[1] arguing that until the district court enters a final judgment on all of the claims in this case, appellant cannot pursue on appeal. However, appellees ignore 28 U.S.C.A. § 1292(a)(3), which allows in admiralty cases appeals from interlocutory decrees that determine the rights and liabilities of the parties.[2] Rule 54(b) certification is not a prerequisite to an appeal under Section 1292(a)(3). *Walter E. Heller & Co. v. O/S SONNY V.,* 595 F.2d 968, 971 (5th Cir. 1979). Nor must all of the rights and liabilities of all the parties be determined before an admiralty interlocutory decree is appealable under Section 1292(a)(3). *O'Donnell v. Latham,* 525 F.2d 650, 652 (5th Cir. 1975).

■ The district court in this case entered final judgment in favor of Gulf Towing against Enno and the AMOCO NEW YORK *in rem.* Because the rights and liabilities of Enno as to the plaintiff Gulf Towing were determined, an interlocutory appeal under Section 1292(a)(3) will lie. *Walter E. Heller & Co. v. O/S SONNY V., supra,* 595 F.2d at 970–71.

Immediately after the TAMPA sank and the AMOCO NEW YORK docked, the pilot Enno presented to Michael Strelic, the captain of the AMOCO NEW YORK, a pilotage agreement that provided in part as follows:

> CONDITIONS OF PILOTAGE—PILOT NOT TO BE PERSONALLY LIABLE: It is agreed between Pilot and the Vessel, her Owners and Operators, that the Pilot performing pilotage (in or outbound; docking/undocking; shifting; with or without tugs) will not be held personally liable for any damage whatsoever sustained by Vessel or for any damage whatsoever caused by Vessel, including without limitation damage to other vessels, craft, docks, wharfs, pilings, the harbor, waters or environment, as a consequence of Pilot's negligence, error in judgment, management or navigation of Vessel or tugs assisting the Vessel, and Vessel, her Owners and Operators agree to hold harmless and indemnify Pilot against all claims brought against Pilot for damage caused by Vessel, including indemnification for legal fees and costs incurred by Pilot in defending such claims or incurred in enforcing this Agreement. Should an attorney be engaged to collect pilotage bills, Vessel, her Owners and Operators agree to pay all costs thereof, including reasonable attorney fees.
>
> Should any part of this Agreement be held ineffective or invalid the remaining portions to be given full effect.

Strelic signed that agreement without reading it; he testified that he customarily signed similar documents without reading them.

---

1. Under Rule 54(b), an order that does not determine all the rights and liabilities of all of the parties in the case is not an appealable, final decision unless the district court directs the entry of judgment and expressly determines that there is "no just reason for delay." *Walter E. Heller & Co. v. O/S SONNY V.,* 595 F.2d 968, 970 (5th Cir. 1979).

2. 28 U.S.C.A. § 1292(a)(3) provides jurisdiction in this Court of Appeals from:

   interlocutory decrees of . . . district courts . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

Enno states that the document signed by Strelic was a form of agreement routinely presented to the masters of vessels upon calling at the port of Tampa.[3] At the time the agreement was entered into the Tampa Bay Pilots Association offered a 15% discount to any United States flag coastwise vessel, such as the AMOCO NEW YORK, using an Association pilot. A United States flag coastwise vessel is not required to use a Tampa Bay pilot if it has on board a federally licensed officer who holds a Tampa Bay pilotage endorsement.

Enno argues on appeal that the district court erred in concluding that the pilotage agreement did not constitute a contract because void as against public policy. He also contends that the court's conclusion that the provisions of the agreement were without consideration is contrary to the only evidence presented on that point.

█ Initially, Enno argues reversal because the district court failed to make findings of fact to support its conclusion that the pilotage agreement did not constitute a contract. Fed.R.Civ.P. 52(a) requires the district court in a non-jury action to make findings of fact and conclusions of law, and where the court fails to comply with Rule 52(a) a remand for appropriate findings is the normal procedure. *Armstrong v. Collier*, 536 F.2d 72, 77 (5th Cir. 1976). However, compliance with Rule 52(a) is not a jurisdictional requirement for appeal; remand is not required if a complete understanding of the issues is possible in the absence of separate findings and if there is a sufficient basis for the appellate court's consideration of the merits of the case. *Id.* Where the facts relied upon to support the judgment are in the record and are undisputed remand is unnecessary. *Id.*

█ In this case the evidence that the Pilots Association gave United States flag coastwise vessels a 15% discount is undisputed. What is disputed is whether that discount constituted consideration for the exculpatory provisions of the pilotage agreement. We conclude that remand is not required because a complete understanding of the issue whether consideration for the pilotage agreement existed may be had from the record.

Enno contends that the 15% discount on standard pilotage charges given by the Tampa Bay Pilots Association to coastwise vessels constituted consideration for the exculpatory language of the pilotage agreement entered into by Strelic.[4] The appellees, however, emphasize that the discount was given to *all* United States flag coastwise vessels without regard to whether those vessels accepted or rejected the exculpatory language in the pilotage agreement. They argue that, because the record reveals no connection whatsoever between the discount and the exculpatory language, *i. e.*, because there is no evidence that the discount would be given *only if* a ship's master accepts the exculpatory clause, the discount did not constitute consideration for the exculpatory provision of the pilotage agreement.

█ It is black-letter law that consideration must be bargained for by the promisor and given by the promisee in exchange for the promise. *See, e. g.*, 1 A. Corbin, Contracts § 116 (1950). In this case the pilotage discount was not bargained for by the AMOCO NEW YORK as consideration for its agreement to accept the exculpatory provision and that discount was not given by the Pilots Association in exchange for the exculpatory agreement. Such discounts were given to *any* coastwise vessel using an Association pilot, regardless of a vessel's acceptance of the exculpatory provision.

Furthermore, the pilot's bill or pilotage agreement was signed *after* Enno's services

---

3. The pilotage agreement document is a printed form used by pilots belonging to the Tampa Bay Pilots Association; Enno is a member of that Association. Printed at the top of the form is "TAMPA BAY PILOTS;" at the bottom are spaces for the signatures of the pilot and the master of the vessel.

4. Apparently the Pilots Association gave a blanket discount to United States flag coastwise vessels because those vessels, unlike foreign flag vessels, could use their own pilots and thus there was a need to induce United States flag vessels to use Association pilots.

had been rendered. Amoco Shipping contends that the pilotage agreement was a mere *receipt* for services rendered and not a contract. In *Tankers & Tramps Corp. v. Tugs Jane McAllister*, 358 F.2d 896, 899–900 (2d Cir.), *cert. denied sub nom. McAllister Bros., Inc. v. Tankers & Tramps Corp.*, 385 U.S. 947, 87 S.Ct. 320, 17 L.Ed.2d 226 (1966), a master of a tanker signed a tug assistance slip or receipt after the tanker grounded as a result of negligence by the pilot. That receipt contained a pilotage clause similar to the clause at issue in this case. The court noted that the master in signing the receipt was merely confirming the date and time of the tug's assistance and that he denied having read the pilotage clause. The court stated that it was not likely that *after* the grounding took place the master would have agreed, without consideration, to an exculpatory clause which would have left the ship solely responsible for heavy damages.

Because the district court correctly concluded that the pilotage agreement providing that Enno would not be liable for his own negligence was not a contract for lack of consideration, we do not discuss whether such an exculpatory agreement is void as against public policy.

AFFIRMED.