**SEA LANE BAHAMAS LIMITED,**
**Plaintiff–Appellant,**

v.

**EUROPA CRUISES CORPORATION,**
**Europa Cruise Line, Ltd.,**
**Defendants–Appellees.**

No. 98–5034.

United States Court of Appeals,
Eleventh Circuit.

Sept. 17, 1999.

William Barry Milliken, Hayden & Milliken, Coral Gables, FL, for Plaintiff–Appellant.

Carl R. Nelson, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, for Defendants–Appellees.

Before BIRCH and DUBINA, Circuit Judges, and SMITH *, District Judge.

SMITH, District Judge:

Appellant Sea Lane Bahamas Limited ("Sea Lane") appeals the district court's order denying its motions to reopen the case and to amend the complaint and thereby join a party. Finding jurisdiction wanting, we dismiss the appeal.

## I. BACKGROUND

This case arises out of an agreement between Sea Lane and appellee Europa Cruise Line, Ltd., whereby Sea Lane chartered the commercial vessel M/V "Europa Jet" to Europa Cruise Line, Ltd. The parties executed such agreement during August of 1989. Ultimately, following repeated defaults and an intervening contract renewal on June 25, 1993, Europa Cruise Line returned the Europa Jet to Sea Lane during November of 1993.

Sea Lane commenced this action on January 31, 1994, alleging that Europa Cruise Line's redelivery of the Europa Jet was in breach of the charter agreement. Before an answer was filed, however, Sea Lane and defendants, Europa Cruise Line, Ltd. and Europa Cruises Corporation ("Europa" [1]), entered into a settlement agreement dated February 4, 1994. The parties re-

---

* Honorable C. Lynwood Smith, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Europa Cruise Line, Ltd. is a wholly owned subsidiary of Europa Cruises Corporation. Both entities are hereafter referred to simply as "Europa."

solved all claims at issue in the case below, save one for damages arising out of the condition of the Europa Jet upon its return.

Pursuant to the settlement agreement, Europa made a voluntary appearance before the United States District Court for the Southern District of Florida, but neither party took action advancing the litigation. Sea Lane moved the court to compel arbitration pursuant to the settlement agreement. By order entered April 24, 1995, the court compelled the parties to submit to arbitration and closed the case.

Defendants filed a written submission for arbitration on November 20, 1997. In that submission, defendants raised the defense that Sea Lane was not the real party in interest. Defendants base this defense on the fact that Sea Lane sold the Europa Jet to Marne (Delaware), Inc. ("Marne") during the Spring of 1990. Sea Lane maintains that it is the registered owner of the vessel and that it retained legal title to the vessel while transferring only "beneficial ownership" to Marne.

The parties quarrel over who was tardy in raising this issue. Defendants say Rule 17(a) places the burden on Sea Lane, which sold the vessel four years prior to commencing this action and eight years prior to filing the motion to amend, to bring the action in the name of the real party in interest. Notwithstanding these facts, Sea Lane—which maintains it is the real party in interest—argues it had no reason to believe defendants would raise the real-party-in-interest defense at this late stage of the proceedings, and particularly after entering the settlement agreement, because defendants had been aware of the relationship between Sea Lane and Marne from its outset, that is, prior to execution of the settlement agreement.

In any event, an arbitration hearing was held on December 9, 1997. In that hearing, the panel of three arbitrators sought to determine exactly what issues were before it. The panel determined that it should not decide whether a party must be or could be added. The following excerpts from the transcript of the hearing explicate the arbitrators' decision:

> MR. MANK: ... I think we can consider the matters to be arbitrated. I don't think the real party [in] interest issue—we think it should be worked out. We think some sort of relief should be gotten, but we don't think that we are the proper panel to decide that.
>
> . . .
>
> MR. FITZGERALD: Let's leave it this way. The ruling party will make the application to [U.S. District Court] Judge Payne. If he decides that this is an issue to be decided by the panel, he will send it back. When it comes back, then we will decide. At this juncture, the panel feels that it is beyond the scope of our instructions under that agreement.

(Transcript of December 9, 1997 Arbitration Hearing, at 76–77.)

Thus the panel directed Sea Lane to seek leave to amend its complaint, so the district court could either resolve the real-party-in-interest issue or send the case back to the panel for resolution. After further time-consuming, and ultimately fruitless settlement negotiations, Sea Lane finally filed motions on March 20, 1998, seeking to reopen the case and to amend the complaint so as to join Marne as a party plaintiff. By order entered June 9, the district court denied both motions. The court then denied Sea Lane's motion to reconsider that order, *via* an order entered on June 25, 1998. Sea Lane filed a timely notice of appeal.

## II. DISCUSSION

*A. Whether the District Court's Order is Appealable Under 28 U.S.C. § 1292(a)(3).*

Sea Lane argues that the charter agreement at issue in the case below is maritime in nature and falls within the district court's admiralty jurisdiction. Here, Sea

Lane invokes 28 U.S.C. § 1292(a)(3), which bestows jurisdiction upon the courts of appeals for "[i]nterlocutory decrees of such district courts or the judges thereof *determining the rights and liabilities of the parties* to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3) (emphasis supplied).

Defendants contest jurisdiction. They first argue that the sole issue in this case arises out of the settlement agreement, not out of the maritime-related charter agreement. Defendants assert that § 1292(a)(3), therefore, is inapposite to this appeal. Second, defendants contend that the orders appealed from did not determine the rights and liabilities of any party as contemplated by that statutory provision. They argue that the only legal person whose rights and liabilities may have been determined by the orders at issue was Marne, which is not a party to this suit.

### 1. Admiralty jurisdiction

■ The order appealed from denies Sea Lane's motions to reopen the case and amend the complaint. Sea Lane's allegations of defendants' breaches of the charter agreement compose the gravamen of the complaint. The complaint therefore falls within the district court's admiralty jurisdiction. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961) ("Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction."); *Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54, 55 (5th Cir.1970)[2] ("[T]he charter provisions of the contract are maritime in nature . . . and within the admiralty jurisdiction of the district court."). Thus, the order denying the motion to amend that complaint also

falls within the district court's admiralty jurisdiction.

The defendants' bare assertion that the issue on appeal relates only to the settlement agreement is fallacious. The settlement agreement *per se* was not at issue in those motions. Rather, it was a factor supporting the court's initial closure of the case. The motions did not challenge the settlement agreement. Moreover, that agreement was not mentioned in either the order denying the motions to reopen the case and amend the complaint, or in the order denying the motion to reconsider. To the contrary, Sea Lane moved to reopen its case, which was based on the charter agreement, and join a party, in order to win relief for the alleged breaches of the charter agreement.

### 2. Application of 28 U.S.C. § 1292(a)(3)

■ A jurisdictional issue with greater merit is whether the orders appealed from "determin[ed] the rights and liabilities of the parties" to this admiralty case, § 1292(a)(3), such that this court has jurisdiction over what Sea Lane concedes is an interlocutory decree.[3] (Brief of Appellant, at vii.) Sea Lane argues that the order denying the motions to reopen and amend determines the rights and liabilities of the parties to this case because the arbitration panel allegedly will not proceed without a determination of whether Marne must be joined as a party plaintiff. Thus, Sea Lane says the order effectively determined the parties' rights by foreclosing all avenues of relief.

### a. Eleventh Circuit precedent

■ No case is directly on point, but opinions of this circuit and its predecessor

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

**3.** Sea Lane properly frames its jurisdictional argument under 28 U.S.C. § 1292(a)(3), the

only provision under which an interlocutory decree in admiralty may be appealed. *See State Establishment for Agricultural Product Trading v. M/V Wesermunde*, 770 F.2d 987, 990 (11th Cir.1985) (*citing Austracan (U.S.A.), Inc. v. M/V Lemoncore*, 500 F.2d 237, 240 (5th Cir.1974)).

court provide sound guidance.[4]  The law is more clear with regard to what is appealable under § 1292(a)(3) than what is not. As a general rule, a district court's order resolving one or more claims on the merits is appealable under § 1292(a)(3), irrespective of any claims that remain pending.[5] Similarly, this court has jurisdiction over the appeal of an order dismissing on the merits one or more parties from an action.[6]

■ Jurisdiction under § 1292(a)(3) does not obtain, however, when the order appealed from "does not reach the merits of the claim and in no way determines, denies, or prejudices any substantive rights of the parties." *Jensenius v. Texaco, Inc.*, 639 F.2d 1342, 1343 (5th Cir. Unit A March 1981). In *State Establishment for Agricultural Product Trading v. M/V Wesermunde*, 770 F.2d 987 (11th Cir.1985), a panel of this circuit found that an order staying trial pending arbitration did not determine the rights and liabilities of the parties but, instead, "merely settled how and where the rights and liabilities would be determined." 770 F.2d at 990. Thus, the court held the order was not appealable under § 1292(a)(3).[7]  *See id.*

Other examples of where this circuit or the former Fifth Circuit dismissed for lack of jurisdiction include appeals from the following orders: order granting a preliminary injunction;[8] order dismissing one of four defendants for lack of personal jurisdiction;[9] order dismissing some, but not all defendants for lack of admiralty juris-

---

4. *See* note 2 *supra*.

5. *See Nichols v. Barwick*, 792 F.2d 1520 (11th Cir.1986) (order determining plaintiff's claims appealable although defendants' third-party complaint remains); *Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 244 (5th Cir. Unit B June 1981) (order appealable although cross-claims between defendants remain); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1113 n. 6 (5th Cir. Unit A April 1981) (order dismissing claims on the merits appealable); *Walter E. Heller & Co. v. O/S Sonny V.*, 595 F.2d 968, 970–71 (5th Cir.1979) (order granting summary judgment appealable although counterclaim remains); *O'Donnell v. Latham*, 525 F.2d 650 (5th Cir.1976) (order dismissing claims against insurer appealable under § 1292(a)(3) because it settled the issue of the insurer's liability); *Crews v. Arundel Corp.*, 386 F.2d 528 (5th Cir.1967) (where negligence claim under the Jones Act and unseaworthiness claim under general maritime law were dismissed as time-barred, the order of dismissal is appealable under Section 1292(a)(3) despite the pendency of a maintenance and cure claim).

6. *See Bradford Marine, Inc. v. M/V "Sea Falcon,"* 64 F.3d 585, 588 (11th Cir.1995) (finding jurisdiction under § 1292(a)(3) where rights and liabilities as to one defendant had been decided in entry of judgment); *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 614–15, 614 n. 1 (11th Cir.1992) (finding jurisdiction under § 1292(a)(3) where the plaintiff's claim against the vessel had been dismissed but the plaintiff's claims against the vessel's two owners remained unresolved); *Nichols*, 792 F.2d at 1522 (finding jurisdiction under § 1292(a)(3) where the plaintiff's claims against two defendants had been finally decided but one defendant's third-party claims remained unresolved); *Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 244 (5th Cir. Unit B June 1981) (finding jurisdiction under § 1292(a)(3) where the plaintiff's claims against three defendants had been resolved but cross-claims between two defendants remained pending); *Walter E. Heller & Co. v. O/S Sonny V.*, 595 F.2d 968, 971 (5th Cir.1979) (finding jurisdiction under § 1292(a)(3) where the plaintiff's claims against two defendants had been resolved but one defendant's counterclaims against the plaintiff remained pending). *See also* 9 James W. Moore, Moore's Federal Practice ¶ 110.19[3], at 202 (2d ed. 1995) ("[Section] 1292(a)(3) has been applied to permit interlocutory appeal of orders that dispose of the claims of one or more but fewer than all of the parties in multiparty admiralty litigation....").

7. The court also found the order was not appealable as a final order under 28 U.S.C. § 1291, or as an injunction under 1292(a)(1). *See M/V Wesermunde*, 770 F.2d at 989 (*citing Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935)).

8. *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. March 1981).

9. *See Seahorse Boat & Barge Corp. v. Jacksonville Shipyards, Inc.*, 617 F.2d 396, 397 (5th Cir.1980).

diction;[10] order denying motion to dismiss for lack of admiralty jurisdiction;[11] order dismissing a counterclaim;[12] and order granting summary judgment on cross claim for indemnity.[13]

Certain principles of interpretation are relevant. First, authority within this circuit appears to differ on whether § 1292(a)(3) should be construed narrowly or broadly. Notwithstanding any incongruity, the greater weight of authority supports a narrow construction. *Compare Jamaica Commodity Trading Company Limited v. Barge Hercules*, 992 F.2d 1162, 1163 (11th Cir.1993) (referring to strict construction while dismissing appeal for lack of jurisdiction), *and Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. March 1981) (noting that courts construe § 1292(a)(3) narrowly), *and Austracan (U.S.A.), Inc. v. M/V Lemoncore*, 500 F.2d 237, 240 (5th Cir.1974) ("Section 1292 as a whole indicates that Congress intended appeals from interlocutory orders to be strictly limited to the usual situations wherein such appeals are expressly authorized."), *with Walter E. Heller and Co. v. O/S Sonny V.*, 595 F.2d 968, 971 (5th Cir. 1979) ("The term 'interlocutory decrees' in section 1292(a)(3) is broadly interpreted."). *Cf. Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) ("Unlike some state procedures, federal law expresses the policy against piecemeal appeals[;] . . . [h]ence we approach this statute [28 U.S.C. § 1292(a)(1) ] somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders.") (citation omitted).

Moreover, close scrutiny reveals a preference for a narrow interpretation. The cases that may be cited for the proposition of a broad construction appear to mean "broad" in the relative sense of interlocu-tory appeals. Those cases still address orders which have resolved a claim finally for one or more parties. In fact, the court in *Walter E. Heller and Co.* followed its statement regarding broad interpretation by quoting Moore's Federal Practice: "In general, it may be said that whenever an order *dismisses a claim* for relief *on the merits* it is appealable under § 1292(a)(3)." 595 F.2d at 971 (quoting 9 J. Moore, Federal Practice ¶ 110.19(3) at 210 (2d ed.1975)) (emphasis supplied). Moreover, the Fifth Circuit has maintained adherence to its strict construction of 1292(a)(3). *See, e.g., Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir.1997) ("Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed.").

This circuit also has considered the purpose of 28 U.S.C. § 1292(a)(3). In *Jamaica Commodity Trading*, the court reiterated what courts agree is the original purpose of § 1292(a)(3):

As our predecessor court, the former Fifth Circuit, noted, this provision originally "was designed to apply in circumstances distinctive to admiralty where it is not uncommon for a court to enter an order finally determining the issues of liability between the parties and then to refer the case to a master for a determination of damages." . . .

992 F.2d at 1163 (citation omitted). At a minimum, the Second, Third, Fourth, and Eighth Circuits are in accord with this characterization of the statute's purpose. That purpose advises a narrow interpretation of § 1292(a)(3). *See Austracan*, 500 F.2d at 240; *Caradelis v. Refineria Panama*, 384 F.2d 589, 591 (5th Cir.1967) ("[O]nly when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a 'final decision.' ").

---

**10.** *See* Austracan (U.S.A.), Inc. v. M/V Lemoncore, 500 F.2d 237, 240 (5th Cir.1974).

**11.** *See Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54 (5th Cir.1970).

**12.** *See Wallin v. Keegan*, 426 F.2d 1313, 1314 (5th Cir.1970).

**13.** *See Jamaica Commodity Trading Company Limited v. Barge Hercules*, 992 F.2d 1162 (11th Cir.1993).

Jurisdiction under § 1292(a)(3) does not appear proper because the order denying Sea Lane's motions to reopen and amend did not resolve any claim on the merits or dismiss a party,[14] or even one claim with respect to a party. Thus, considering the precedent within this circuit, the strict construction of § 1292(a)(3), and that section's purpose, a standard interpretation of § 1292(a)(3) requires dismissal of the appeal for want of jurisdiction.

  b. *Cases that may support jurisdiction*

One case from this circuit and two from other circuits arguably support jurisdiction, however. Sea Lane relies on the opinion of the Second Circuit Court of Appeals in *A.H. Bull Steamship Company, Inc. v. United States*, 235 F.2d 1 (2d Cir. 1956). In that case, the plaintiff/appellant had settled and compromised two libels (the "original libels") filed against the United States in 1944, but no stipulation of discontinuance and dismissal was filed. Plaintiff filed three separate libels that same year which were settled and discontinued during 1945, with the proviso that plaintiff could seek further administrative or judicial relief provided total recovery did not exceed "just compensation." 235 F.2d at 2. Plaintiff pursued the administrative remedy until 1954, when claims for additional compensation were denied as in excess of just compensation. With no potential of securing further relief through administrative channels, plaintiff directed its efforts toward federal court. Facing a statute of limitations which had run for these claims, plaintiff sought to amend the original libels (which, though settled, had not been dismissed) and incorporate these subsequent, time-barred claims that were "in no way germane to the subject matter of the other two fortuitously surviving libels." *Id.* The district court denied the motion to amend. Without further analysis, the court of appeals concluded that "[d]enials of these motions effectively ter-minates these libels and is appealable un-der 28 U.S.C. § 1292(a)(3), even without formal orders of dismissal." *Id.*

This circuit, in *Isbrandtsen Marine Services, Inc. v. M/V Inagua Tania*, 93 F.3d 728, 733 (11th Cir.1996), held "it is ... clear that the interlocutory order denying intervention to the seamen constitutes an appealable order determining the rights and liabilities of the parties as 28 U.S.C. § 1292(a)(3) requires." *Isbrandtsen* involved foreign seamen attempting to intervene in an *in rem* admiralty action and assert a maritime lien against the vessel for wages, supplies, and repairs. The district court ordered an interlocutory sale of the vessel, but denied the seamen's motion to intervene, because of procedural deficiencies in their pleadings in light of local rules of court, without allowing them an opportunity to amend those pleadings. The court of appeals noted that the vessel often is the only asset against which seamen can enforce their claims and that the court had special obligations to the seamen, who were "wards of admiralty whose rights federal courts are duty-bound to jealously protect." 93 F.3d at 733. The court emphasized that these seamen were foreign and without adequate representation in court and, therefore, should enjoy even more protection. *Id.* at 734.

Under somewhat similar circumstances, the Third Circuit entertained an appeal from an order confirming the judicial sale of a cargo ship, because that order foreclosed "appellants' only meaningful avenue of relief." *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 922–24 (3d Cir.1987). Appellants argued that "the peculiar facts of th[e] case" rendered the district court's decision appealable as a final determination of the merits of their claims. *Id.* at 921. The court of appeals was impressed by that argument. *Id.*

---

**14.** As defendants demonstrate, Marne is not a party to this action. If Marne had attempted to intervene and been denied, however, the order denying that intervention may be ap-pealable under § 1292(a)(3). *See Isbrandtsen Marine Services, Inc. v. M/V Inagua Tania*, 93 F.3d 728, 733 (11th Cir.1996).

It thus comes down to this: appellants' only meaningful avenue for relief is against the fund for reimbursement of the costs of unloading the scrap steel; these claims are viable only if the unloading costs are deemed to be administrative expenses payable ahead of the mortgage and maritime liens. . . . By the district court's administrative costs decision adverse to appellants, their claims have been conclusively determined. . . .

In denying [the] application for administrative expenses, the district court effectively determined appellants' rights to a portion of the sale proceeds. . . . Accordingly, under the peculiar circumstances of this case we decide that we have jurisdiction on appeal pursuant to 28 U.S.C. § 1292(a)(3).

815 F.2d at 922.

    *c. Whether Sea Lane can articulate a viable jurisdictional argument.*

    *i. Is relief otherwise available?*

To avail itself of these cases, Sea Lane must first demonstrate that the district court's order in fact precludes all avenues of relief. Sea Lane has some stormy seas to cross on this cruise. First and foremost, nothing in the record establishes that the arbitration panel cannot proceed on the merits of Sea Lane's claim. In fact, the transcript of the hearing calls into question the essential premise of Sea Lane's argument, that the arbitration panel will not proceed absent the district court's determination of whether Marne must be joined: "If [Judge Payne] decides that this is an issue to be decided by the panel, he will send it back. When it comes back, then we will decide." (Transcript of December 9, 1997 Arbitration Hearing, at 77.)

In any event, neither the settlement agreement nor the order compelling the parties to arbitration pursuant to that agreement precludes the panel from determining whether Marne is the real party in interest. The portion of the settlement agreement governing the arbitration is paragraph four:

    4. EUROPA and SEA LANE agree that *as to the remaining dispute between the parties in regard to the claim of SEA LANE for damages arising out of the condition of the vessel upon its redelivery to SEA LANE,* all as provided by the charter agreement, the parties shall use their best efforts to settle their disputes or differences. To this affect, they shall consult and negotiate with each other in good faith and understanding of their mutual interest to reach a just and equitable solution satisfactory to both. If they do not reach such a solution within a period of twenty (20) days, then *the disputes or differences under the charter agreement shall be referred to arbitration* in Miami, Florida, by a single arbitrator to be agreed by the parties; however, if a single arbitrator cannot be mutually agreed by the parties then by three (3) arbitrators, one arbitrator to be nominated by SEA LANE and another by EUROPA and, the two (2) to select a third. The award of the arbitrators shall be final and binding on both parties and enforceable in court.

(Agreement dated February 4, 1994, at ¶ 4) (emphasis supplied).

Considering that language, the court ordered the parties to submit to "arbitration under the terms as agreed in the February 4, 1994 Settlement Agreement." (Order filed April 11, 1995, at 5.) Moreover, the court did not pass on alleged conflicts of interest of counsel; rather, it said those issues "must be resolved by the arbitrator who, according to the parties' enforceable arbitration agreement, shall resolve this case on the merits." (*Id.*)

It is apparent from paragraph four of the agreement that the entire dispute (that is, Sea Lane's claim for damages to the vessel upon redelivery) was submitted to arbitration per the court's enforcement of that agreement. Furthermore, the court interpreted the arbitration provision

broadly, ruling that attorneys' alleged conflicts of interest should be resolved in arbitration as part of the determination on the merits. Without question, the positioning of the parties to the dispute, and therefore the real-party-in-interest defense that Europa asserted, is more central to the merits of the case than the positioning of the lawyers. As such, that defense should be decided by the arbitration panel,[15] an outcome which Europa championed at the arbitration hearing. Moreover, as Europa urged at oral argument before this court, Sea Lane may resort to district court post-arbitration and challenge the panel's determination of whether it suffered damages, should that finding prove unfavorable.

Sea Lane contends the settlement agreement allows for arbitration of only the claim for damages. Even so, a defense to liability for those damages must be addressed for resolution of such claim. The language of the agreement and the district court's order compelling arbitration belie any argument that the amount of damages is the only issue. First, the dispute to be resolved is "in regard to the claim of SEA LANE for damages." The language signaling a dispute as to the *claim* for damages does not limit the dispute solely to the *amount* of damages claimed. Rather, liability for any damages claimed could be at issue. In fact, Europa denies damages, and Sea Lane identifies no admission of liability by Europa. Thus, the validity of a defense must be determined for the claim for damages to be resolved on its merits.

Even without arbitration, Sea Lane likely has means of obtaining the relief sought from Europa. For example, it may bring a separate action on the settlement agreement.[16] As one arbitrator suggested, the settlement agreement would have to be either a fraud or a nullity. There is little dispute that the parties knew of the relationship between Sea Lane and Marne. Although defense counsel seeks to divert attention from this fact by making much ado about his involvement in the case beginning only recently, the district judge found "it is undisputed that it was the principals of Sea Lane and Europa, and not their respective attorneys, who negotiated the terms of the Settlement Agreement." (Order filed April 11, 1995, at 4.) Furthermore, assuming the Florida statute of limitations applies, it may not bar such an action brought by Sea Lane.[17]

■ Challenging the settlement agreement sheds light on yet another avenue for

15. During the hearing, each of the three members of the arbitration panel suggested that resolution could be had in that forum. In fact, Mr. Anderson said "there are probably a half dozen other ways of solving the problem of getting the parties properly in line." (Transcript of December 9, 1997 Arbitration Hearing, at 66.) Specifically, Mr. Mank inquired about simply joining Marne in the arbitration hearing. Europa objected on the grounds that such joinder was untimely. Mank responded, suggesting that Europa may be estopped from pursuing that objection. (*Id.* at 69.) Mr. Fitzgerald said he thought the panel was empowered to decide the issue (*id.* at 67), and that it would nevertheless decide the issue if the district court sent the case back to the panel leaving that issue unresolved. (*Id.* at 77.)

16. Sea Lane conceded during oral argument that such an action may be viable. The parties dispute, however, whether a new action seeking relief for damages to the vessel, and brought by Sea Lane and Marne, would be barred by a five year statute of limitations on contract actions, or whether maritime law's doctrine of laches would allow such an action at this time.

17. *Compare* Fla. Stat. ch. 95.11(3)(j) (1998) (prescribing a four-year limitations period for actions founded on fraud) *with* Fla. Stat. ch. 95.031(2) (Supp.1996) ("Actions for ... fraud under § 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, ... but in any event an action for fraud under § 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud...."). *See also Koehler v. Merrill Lynch & Company, Inc.*, 706 So.2d 1370, 1372 (Fla.Dist.Ct.App. 1998) ("A cause of action for fraud does not accrue until the basis for the action is discovered or should be discovered through due diligence.").

relief: moving the district court to reopen and reconsider its order compelling arbitration in light of the alleged fraud in, or breach of the foundational settlement agreement. Such a request would be compelling in light of the "fraud" and may persuade the court to reopen the case. Moreover, such a challenge may convince the court that the equities weigh in favor of considering joinder of Marne. In any event, the appeal of a denial of such motion may have a better jurisdictional foundation.[18]

### ii. Determination of rights and liabilities

Assuming *arguendo* that the order at issue effectively forecloses relief for Sea Lane, the Second Circuit's quick conclusion in *A.H. Bull* may support jurisdiction.[19] Nevertheless, this panel would have to break new ground in this circuit to hold that denial of motions to reopen a case and amend the complaint determines the rights and liabilities of the parties. This would be a significant extension from *Isbrandtsen*, where the district court (not an arbitration panel) denied *intervention* to foreign seamen and *dismissed* the complaint in a case that would proceed to dispose of the only resources from which the appellants could recover. *Isbrandtsen* could be applied directly in this case only if Marne were appealing an order denying it leave to intervene. Even still, nothing here would give rise to a special duty of the court such as the duty owed to the foreign seamen in *Isbrandtsen*.

Moreover, both *Isbrandtsen* and *Kingstate Oil* are easily distinguishable, because the parties seeking relief in those cases faced imminent exhaustion of a limited fund available for recovery. The willingness to bear the expenses of this protracted litigation suggests defendants' pockets are not so shallow as to render them judgment-proof, and nothing in the record indicates otherwise.

Accordingly, Sea Lane's argument, premised upon the alleged absence of a viable course for pursuing relief, fails.

## III. CONCLUSION

The district court's order denying Sea Lane's motion to reopen and amend did not determine the rights and liabilities of the parties and, therefore, is not appealable. Accordingly, this appeal is DISMISSED for want of jurisdiction.

---

**18.** Though not passing on the merits of the following argument, the court notes that Sea Lane could invoke the original purpose of 28 U.S.C. § 1292(a)(3), and compare the circumstances of this case. The purpose of that section was to allow appeals of orders in admiralty where courts commonly would "finally determin[e] the issues of liability between the parties and then to refer the case to a master for a determination of damages." *Jamaica Commodity Trading*, 992 F.2d at 1163. The order submitting the damages claim to arbitration pursuant to the settlement agreement may be analogized to an order resolving the dispute and sending the case to a master for a damages determination. Consequently, this jurisdictional argument under 1292(a)(3) may prove more availing, particularly where Sea Lane challenges the validity of the settlement agreement, which is the basis of the subject order.

**19.** In addition to the fact that the administrative channel analogous to the arbitration here had been fully exhausted, *A.H. Bull* may be distinguished from the instant case because the parties in that case had agreed that plaintiff could pursue additional compensation administratively *or judicially*. In the instant case, the parties agreed to arbitration only— an agreement Europa eventually disputed. In fact, Europa never filed an answer in the district court.