[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10374
_____

D.C. Docket No. 1:17-cv-22856-KMW


JOHN MINOTT,

                                                            Plaintiff-Appellant,

versus

M/Y BRUNELLO,
Official No. 71147, her engines, tackle, and appurtenances, in rem,
BRUNELLO YACHT CHARTERS, LTD.,
a foreign corporation, as owner of the M/Y Brunello,
DERECKTOR FLORIDA, INC.,
a Florida corporation,
XYZ CORPORATION(S),
marine contractors,
JOHN DOE,
as captain of the M/Y Brunello,

                                                            Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 6, 2018)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal from the denial of a warrant *in rem* for the arrest of a vessel requires us to decide whether we have interlocutory jurisdiction, and if so, whether John Minott established that the injury he allegedly suffered while boarding the *Brunello* entitles him to a warrant *in rem* for the arrest of the vessel. Minott filed a complaint against the *Brunello* and other parties alleging that he was entitled to enforce a maritime lien against the *Brunello* for damages arising from a maritime tort. He then moved the district court to direct the clerk to issue a warrant *in rem* for the arrest of the *Brunello*, but the district court denied the motion. In addition to expressing doubt about whether Minott's claim fell within its maritime jurisdiction, 28 U.S.C. § 1333, the district court ruled that Minott's claim did not "give[] rise to a 'maritime lien' supporting the *in rem* seizure of the [v]essel" based on the erroneous premise that maritime liens arise only by statute and not by operation of the general maritime law. It also denied Minott's motion for reconsideration. We have interlocutory jurisdiction, *id.* § 1292(a)(3), Minott's claim for a maritime tort against the *Brunello* falls within the admiralty jurisdiction of the district court, *id.* § 1333(1), and Minott is entitled to a warrant *in rem*, Fed. R. Civ. P. Supp. R. C(3)(a)(i). We reverse and remand with instructions to direct the clerk to issue a warrant *in rem* for the arrest of the *Brunello*.

2

## I. BACKGROUND

John Minott worked for Butch Kemp Designs, a marine engineering firm hired to perform maintenance and repairs aboard the *Brunello* while it was docked in navigable waters in Dania, Florida. Minott attempted to board the vessel, but when he was walking up the gangway "the [v]essel['s] captain or crew, suddenly and without warning, put the engines in gear, causing the gangway . . . to detach from the [v]essel and fall overboard, together with [Minott]." Minott suffered "severe injuries to his head, neck, and spine."

Minott filed a "verified complaint to enforce a maritime lien for damages arising from a maritime tort" in the district court. *See* Fed. R. Civ. P. 9(h); S.D. Fla. Adm. & Mar. R. B(2). The complaint asserted an *in rem* claim against the *Brunello* and *in personam* claims against other individual and corporate defendants. Minott then moved the district court to direct the clerk to issue a warrant *in rem* for the arrest of the vessel. *See* Fed. R. Civ. P. Supp. R. C(3)(a)(i); S.D. Fla. Adm. & Mar. R. B(3)(a). He explained that the tort was "cognizable under admiralty jurisdiction," that he was "entitled to a maritime lien," that he was "entitled to arrest the [v]essel and litigate directly against [it] *in rem*," and that the vessel was "transitory in nature and at risk of leaving the jurisdiction of [the district court] if not immediately arrested."

3

The district court denied the motion without prejudice after finding that Minott failed to "establish good cause for the issuance of a warrant *in rem*." It concluded that a maritime tort cannot "form the basis for a maritime lien" and cited a federal statute, 46 U.S.C. § 31342, that grants a lien to "a person providing necessaries to a vessel." The district court also explained that its "uncertainty" whether Minott's "claim [fell] under maritime jurisdiction . . . weigh[ed] against issuing a warrant." Although it did not decide the question, the district court suggested that it lacked jurisdiction because Minott's "activity . . . [was] not significantly tied to maritime activity" and his accident had "minimal" potential to "disrupt[] . . . maritime commerce."

Minott moved for reconsideration and cited caselaw where plaintiffs filed *in rem* actions against vessels for maritime torts. The district court denied the motion. It explained that Minott's original motion sought a warrant only "based on 46 U.S.C. [section] 31301(5)(B)" and that he could not "raise [new] arguments" that he was "entitled to a warrant of arrest under [other] authorities." It also explained that these authorities "still . . . [failed to] convince [it] that alleged tort victims . . . are entitled to issuance of a warrant of arrest *in rem* upon filing a complaint."

Minott appealed and invoked our interlocutory jurisdiction, 28 U.S.C. § 1292(a)(3).

4

## II. STANDARD OF REVIEW

"Whether a party's claim[] give[s] rise to a maritime lien is a legal question that is reviewed *de novo,*" *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1297 (11th Cir. 2017), as is "[t]he [d]istrict [c]ourt's application of admiralty law and the local rules implementing that law," *Isbrandtsen Marine Servs. v. M/V Inagua Tania*, 93 F.3d 728, 733 (11th Cir. 1996). Under Federal Rule of Civil Procedure Supplemental Rule C, we review the facts alleged in the "complaint and . . . supporting papers" to determine "[i]f the conditions for an *in rem* action [and warrant] appear to exist." Fed. R. Civ. P. Supp. R. C(3)(a)(i) (italics added).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that we have interlocutory jurisdiction over this appeal. Second, we explain that the district court erred when it refused to direct the clerk to issue a warrant *in rem* for the arrest of the *Brunello*.

### A.    *We Have Interlocutory Jurisdiction.*

We have interlocutory jurisdiction over appeals from "decrees of . . . district courts . . . [that] determin[e] the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3). "As a general rule, a district court's order resolving one or more claims on the

merits is appealable under [section] 1292(a)(3), irrespective of any claims that remain pending." *Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1321 (11th Cir. 1999). For example, we "ha[ve] jurisdiction over the appeal of an order dismissing on the merits one or more parties from an action." *Id.* (collecting cases); *see also Nichols v. Barwick*, 792 F.2d 1520, 1522 (11th Cir. 1986) ("Not all the rights and liabilities of the parties need be determined before such an order is appealable."); *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 614 & n.1 (11th Cir. 1992). But we lack jurisdiction "when the order appealed from 'does not reach the merits of the claim and in no way determines, denies, or prejudices any substantive rights of the parties.'" *Sea Lane Bahamas*, 188 F.3d at 1321 (quoting *Jensenius v. Texaco, Inc.*, 639 F.2d 1342, 1343 (5th Cir. Unit A Mar. 1981)).

The refusal of the district court to issue a warrant *in rem* for the arrest of the *Brunello* falls within our interlocutory jurisdiction because it has the effect of a final order that "reach[es] the merits of the claim" and "prejudices [the] substantive rights of [Minott]." *Id.* (quoting *Jensenius*, 639 F.2d at 1343). To be sure, the decision refusing to arrest the *Brunello* did not resolve Minott's claims against the other defendants. But it resolved his claim against the vessel, and he is entitled to immediate review of that decision.

6

The refusal to arrest the *Brunello* resolved the question of the vessel's liability because "[a]ttachment subjecting the *res* to the jurisdiction of the court is a prerequisite to a finding of *in rem* liability." *Dow Chem. Co. v. The Barge UM-23B*, 424 F.2d 307, 311 (5th Cir. 1970) (italics added). For example, in *The Pesaro* the Supreme Court exercised interlocutory jurisdiction over a "decree" that released a vessel from arrest but did not "formally" "dismiss the libel." 255 U.S. 216, 217 (1921). The Supreme Court explained that although the "decree . . . [did] not dismiss the libel," this detail was not "decisive" because "[t]he decree . . . declare[d] [that the vessel was] not subject to any such process[,] . . . direct[ed] her release . . ., [and] end[ed] the suit as effectually as if it formally dismissed the libel." *Id.* In short, although the question whether to arrest a vessel arises at the beginning of litigation, it also "reach[es] the merits of the claim," *Sea Lane Bahamas*, 188 F.3d at 1321 (quoting *Jensenius,* 639 F.2d at 1343), because it necessarily dictates jurisdiction and liability.

More importantly, a failure to arrest a vessel "prejudices [the] substantive rights of the parties" in the light of the mobile nature of vessels. *Id.* (quoting *Jensenius,* 639 F.2d at 1343). If a vessel leaves the jurisdiction while the district court is resolving claims against other defendants, the plaintiff risks forever losing his "substantive" right to "enforce a maritime lien," *Trinidad*, 966 F.2d at 615, because "where the *res* is no longer before the court, . . . *in rem* jurisdiction is

7

destroyed" and the district court "can[not] proceed to adjudication." *L.B. Harvey Marine, Inc. v. M/V River Arc*, 712 F.2d 458, 459 (11th Cir. 1983) (italics added). The Supreme Court highlighted this concern in *Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*, when it exercised interlocutory jurisdiction over "an order . . . vacating a foreign attachment of a vessel." 339 U.S. 684, 685 (1950); *see also id.* at 688–89. The Supreme Court explained that "[a]ppellate review of [an] order dissolving [an] attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible," *id.* at 689, and it underscored that the question of attachment "f[e]ll in that small class [of orders] which finally determine claims of right separable from . . . rights asserted in the action . . . [that are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred," *id.* at 688–89 (quoting *Cohen v. Beneficial Indus. Loan Corp*, 337 U.S. 541, 546 (1949)); *see also Puerto Rico Ports Auth. v. Barge Katy-B*, 427 F.3d 93, 101 (1st Cir. 2005) (explaining that concerns of "effective finality" establish that "an order vacating an arrest finally determines the rights and liabilities of the parties within the meaning of section 1292(a)(3)"). Because Minott's present inability to proceed *in rem* against the *Brunello* may become permanent if the vessel departs the district, we have interlocutory jurisdiction.

8

B.    *The District Court Erred when It Refused To Direct the Clerk To Issue a Warrant* In Rem *for the Arrest of the* Brunello.

We divide this section in two parts. First, we explain that the tort alleged in the complaint falls within the admiralty jurisdiction of the district court. Second, we explain that this maritime tort entitles Minott to proceed *in rem* against the *Brunello* and obligates the district court to direct the clerk to issue a warrant *in rem* for the vessel's arrest.

1.    The Alleged Incident Falls Within Admiralty Jurisdiction.

The Constitution grants federal courts power over "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2; *cf.* 28 U.S.C. § 1333. Maritime jurisdiction over torts is based on the location of the incident and a nexus to maritime activity. *See* 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 3-5 (5th ed. 2017). A district court has jurisdiction if the tort "occurred on navigable water or . . . [occurred] on land [but] was caused by a vessel on navigable water," and if the tort "ha[d] sufficient connection with maritime activity." *Alderman v. Pac. N. Victor, Inc.*, 95 F.3d 1061, 1064 (11th Cir. 1996) (quoting *Jerome B. Grubart Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

The "connection" element of this test for maritime-tort jurisdiction "raises two issues." *Id.* "First, we are required to assess the general features of the type of accident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce." *Id.* (quoting *Grubart*, 513 U.S. at 534) (internal

9

quotation marks omitted). A plaintiff can satisfy this requirement by alleging "[u]nsafe working conditions aboard a vessel under repairs, maintenance, or conversion" because an accident caused by such conditions "could have the potential to disrupt further repairs of that vessel, vessels being worked on at the same dock, or vessels waiting to be worked upon." *Id.* "Second, we must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (quoting *Grubart*, 513 U.S at 534) (internal quotation marks omitted). This inquiry looks to "the activities of the tortfeasor" and encompasses a "broad" range of conduct, including "conversions, repairs, or maintenance aboard a vessel in navigable water." *Id.* at 1065.

The district court suggested, without deciding, that it lacked admiralty jurisdiction. It underscored that Minott's fall had "minimal" "potential[]" to "disrupt[] . . . maritime commerce . . . [because] any rescue effort would likely occur from land." And it explained that "[t]he general character of [Minott's] activity—walking to the boat—[was] not significantly tied to maritime activity." The district court concluded that its "uncertainty" about this question "weigh[ed] against issuing a warrant." We disagree.

Minott clearly alleged a maritime tort. The incident "occurred on navigable water," *id.* at 1064 (citation and internal quotation marks omitted), when the

10

*Brunello* was docked in Dania, Florida. Although Minott was not yet aboard the vessel when the gangway collapsed, "[i]t is well established that traditional maritime law encompasses the gangway." *White v. United States*, 53 F.3d 43, 46 (4th Cir. 1995). For example, in *The Admiral Peoples*, the Supreme Court explained that admiralty jurisdiction extended to an accident where a "disembarking . . . [passenger] was injured by falling from a gangplank leading from the vessel to the dock," 295 U.S. 649, 650 (1935), because the gangplank "was no less part of the vessel because in its extension to the dock it projected over the land," *id.* at 651–52. To be sure, the Supreme Court mentioned that "while [the passenger] was on the gangplank, she had not *yet left* the vessel." *Id.* at 652 (emphasis added). But this observation about the passenger's direction of travel does not affect the "basic fact . . . that the gangplank [is] a part of the vessel." *Id.* at 651. If anything, Minott's injury is a stronger candidate for admiralty jurisdiction because he fell into the water, unlike the passenger in *The Admiral Peoples* who "was violently thrown forward upon the dock." *Id.* at 652. Our predecessor circuit also explained in *O'Keeffe v. Atlantic Stevedoring Co.*, 354 F.2d 48 (5th Cir. 1965), that a plaintiff "sustained his injury over navigable water," *id.* at 50, when he was "lifted . . . from the dock" where he was working by a winch and struck either "the dock . . . [or] the side of the ship" before he fell into the water and drowned, *id.* at 49. And even if Minott's injury had occurred on land, it was

11

"caused by" the vessel, *Alderman*, 95 F.3d at 1064, when its "captain or crew . . . put the engines in gear." An injury caused by a vessel in navigable waters is a maritime tort.

The incident satisfied the first element of the "connection test" because the "general features of [this] type of accident . . . [had] a potentially disruptive impact on maritime commerce." *Id.* (citation and internal quotation marks omitted). Minott's employer had been hired to "perform maintenance and repairs aboard the . . . *Brunello*," and Minott's injury threatened "to disrupt further repairs of that vessel," not to mention the repairs of "vessels being worked on at the same dock . . . [and] vessels waiting to be worked upon." *Id.* The district court overlooked these consequences when it narrowly considered only the possibility of a "rescue effort [that] would likely occur from land" and failed to contemplate the *potential* impact of worker injuries on maritime commerce. To be sure, this particular accident may not have had widespread effects, but "[w]hether or not disruption resulted here is of no moment." *Id.*

On the second element, "the general character of the activity giving rise to [Minott's accident] shows a substantial relationship to traditional maritime activity." *Id.* (citation and internal quotation marks omitted). The district court focused on the activities of Minott when it explained that his "activity—walking to the boat—[was] not significantly tied to maritime activity." But this analysis

12

considered the actions of the incorrect party because we look instead to "the activities of the [alleged] *tortfeasor*"—in this case, the *Brunello*. *Id.* at 1065 (emphasis added). Minott alleged that the gangway fell when "the [v]essel captain or crew . . . put the engines in gear," and the operation and movement of a vessel in navigable waters are quintessential "maritime activit[ies]." *Id.* at 1064. That the incident occurred when the vessel was docked for "maintenance and repairs" also underscores its maritime quality, for "[w]ork upon ships . . . docked in navigable waterways is an indispensable maritime activity." *Id.* at 1065.

2.    Minott is Entitled to a Warrant *In Rem* for the Arrest of the *Brunello*.

A vessel is "an entity apart from its owner" that "is liable . . . for torts," *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1345 (5th Cir. Unit A Dec. 1981), and a maritime tort gives the victim a lien against the vessel "by operation of the general maritime law," Schoenbaum, *supra*, at § 9-1. This "lien is created as soon as the claim comes into being," and the "principle [of an automatic lien] . . . [is] equally applicable to all claims . . . which can be enforced in admiralty against the ship, whether arising out of tort or of contract." *The John G. Stevens*, 170 U.S. 113, 117 (1898); *see also The Bird of Paradise*, 72 U.S. 545, 554, 555 (1866) (explaining that "[s]hip-owners, unquestionably, as a general rule, have a lien upon the cargo for the freight" that "arises from the usages of commerce, independently of the agreement of the

13

parties, and not from any statutory regulations"); *Craddock v. M/Y The Golden Rule*, 110 F. Supp. 3d 1267, 1276 (S.D. Fla. 2015) ("A maritime lien attaches and is perfected by operation of law when the claim arises."); *Riverway Co. v. Spivey Marine & Harbor Serv.*, 598 F. Supp. 909, 912 (S.D. Ill. 1984) ("The creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the *res*." (citing *The Bold Boccleaugh*, 13 Eng. Rep. 884 (1851))).

"Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it," *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010), and "[u]nder traditional admiralty law, maritime property is subject to arrest in order to enforce a maritime lien," *Merchants Nat'l Bank*, 663 F.2d at 1345. "Upon [the] filing [of] an *in rem* complaint, the clerk of court issues a warrant for the arrest of the *res*." *Crimson Yachts*, 603 F.3d at 868. This process is controlled by Supplemental Rule C, which provides that "[a]n action *in rem* may be brought . . . [t]o enforce any maritime lien," Fed. R. Civ. P. Supp. R. C(1) (italics added), and that, "[i]f the conditions for an *in rem* action appear to exist, the court *must issue* an order directing the clerk to issue a warrant for the arrest of the vessel," *id.* Fed. R. Civ. P. Supp. R. C(3)(a)(i) (emphasis and italics added); *see also* S.D. Fla. Adm. & Mar. R. B.

14

The district court ruled that Minott "failed to establish that his negligence claim [gave] rise to a 'maritime lien' supporting the *in rem* seizure of the [v]essel." It ruled that maritime liens are exclusively "governed by 46 U.S.C. [section] 31342," which addresses materialmen's liens. It then underscored that this statute "provides that only a 'person providing necessaries to a vessel' has a maritime lien and corresponding right to bring a civil action *in rem*," and that "[t]he applicable statutes and rules do not expressly contemplate that a 'maritime tort' can form the basis for a 'maritime lien.'" The district court concluded that *in rem* proceedings for torts would be "untenable and contrary to the applicable law." And it chastised Minott for failing to cite more than one "authority that would allow for the arrest of a vessel [for a tort]."

The district court erred. The authority cited by Minott, *Craddock*, 110 F. Supp. 3d at 1276, correctly stated that a maritime tort gives the victim a lien against the vessel. *See id.* (explaining that the plaintiff "has alleged a maritime tort" and that "[i]t follows that [he] has a maritime lien" because "[a] maritime lien attaches and is perfected by operation of law when the claim arises"). Indeed, the "characteristic maritime liens recognized under United States law" include "[c]laims for maritime torts including personal injury." Schoenbaum, *supra*, at § 9-1. And contrary to the reasoning of the district court that section 31342 is the only font for maritime liens and *in rem* proceedings, "[m]ost maritime liens arise by

15

operation of the general maritime law." *Id.* To be sure, Congress can change maritime law, but nothing in section 31342, which addresses the completely different question of materialmen's liens, abrogates Minott's ability to assert a tort claim. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012) ("A statute will be construed to alter the common law only when that disposition is clear."); *cf. Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 416 (2009) (explaining that "Congress was envisioning the continued availability of . . . common-law causes of action" "for injured seamen" when it passed the Jones Act to confer additional statutory rights). Indeed, federal courts have long acknowledged a wide variety of maritime liens "arising out of services rendered to *or injuries caused by* [a vessel]." Schoenbaum, *supra*, at § 9-1 (emphasis added) (collecting cases). And Minott cited several authorities dating to the 1800s that establish that a vessel's tort grants the injured victim an automatic lien. *See, e.g.*, *The Anaces*, 93 F. 240 (4th Cir. 1899). In short, his "prima facie showing that [he had] an action *in rem* against the [*Brunello*] . . . and that the [*Brunello*] [was] within the district," *Craddock*, 110 F. Supp. 3d at 1277, obligated the district court to "order . . . the clerk to issue a warrant for the arrest of the vessel," Fed. R. Civ. P. Supp. R. C(3)(a)(i).

16

## IV. CONCLUSION

We **REVERSE** and **REMAND** with instructions for the district court to

enter an order directing the clerk to issue a warrant for the arrest of the *Brunello*.

17